**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| RENAISSANCE LEASING, LLC, ) <br> TEAM EXCAVATING LLC and ) <br> JOHN UHLMANN, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> vs. ) <br>  ) <br> VERMEER MANUFACTURING COMPANY, ) <br> VERMEER GREAT PLAINS, INC. ) <br>  ) <br> Defendants. ) | No. 05-445-CV-W-FJG |

## ORDER

Currently pending before the Court are the following motions: Plaintiffs' Motion for Sanctions (Doc. # 116); Defendant Vermeer Manufacturing Company's Motion to Dismiss for Lack of Jurisdiction (Doc. # 120); Defendant Vermeer Great Plains Inc.'s Motion to Dismiss for Lack of Jurisdiction (Doc. # 122); Vermeer Great Plains Inc.'s Motion to Strike Testimony of Plaintiff's Expert Chris Pflaum (Doc.# 124); Vermeer Great Plains Inc.'s Motion to Strike Doc. # 125 (Doc. # 127); Vermeer Manufacturing Company's Motion to Strike Plaintiff's Designation and Disclosure of Expert Witness Christopher Pflaum (Doc. # 131); Vermeer Manufacturer's Motion to Strike Plaintiff's Disclosure and Designation of Gary Kurtz (Doc. # 133); Plaintiff's Motion for Discovery (Doc. # 141); Vermeer Manufacturing Company's Motion for Summary Judgment (Doc. # 143); Vermeer Great Plains Motion for Summary Judgment (Doc. # 148); Joint Motion for Extension of Time of One-Day for Pre-Trial Filings (Doc. # 170) and Plaintiff's Motion for Leave to File Excess Pages (Doc. # 186).

## I. BACKGROUND

Plaintiff Renaissance Leasing LLC and TEAM Excavating LLC are Missouri limited liability companies with their principal place of business in Kansas City, Missouri. John Uhlmann was the ultimate owner of TEAM and its predecessors and resides in Kansas. Vermeer is a heavy equipment manufacturing company, incorporated in Iowa, with its principal place of business in Pella, Iowa. Great Plains is a distributor of Vermeer's construction equipment and is a Kansas corporation with its principal place of business in Olathe, Kansas. Plaintiffs allege that this Court has federal question jurisdiction based on its allegations that defendants engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs further allege that the Court has supplemental jurisdiction over the remainder of its claims, including the fraud, breach of warranty and breach of contract claims, pursuant to 28 U.S.C. § 1367(a).

## II. STANDARD

Defendants filed their Motions to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1). However, defendants did not specify whether they were making a facial attack or a factual attack on plaintiffs' Complaint. "In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). . . . In a factual attack, the court inquires into and resolves factual disputes." Real Estate Equity Strategies, LLC v. Internal Revenue Service, No. 05-1008 (JNE/SRN), 2006 WL 334760, *2 (D.Minn. Feb. 13, 2006)(internal citations and quotations omitted). "If a party mounts a factual challenge, however, the Court may look outside the pleadings to determine whether jurisdiction exists, and the nonmoving party loses the benefit of favorable inferences from its factual statements. . . . Supplemental affidavits, . . . deposition

2

testimony, . . . other documents, . . . and live testimony, . . . are all appropriate for consideration." Dolls, Inc. v. City of Coralville, Iowa, No. 4:05-CV-00092-JEG, 2006 WL 759743, * 8 (S.D.Iowa Mar. 24, 2006)(internal citations and quotations omitted). In the instant case, the defendants submitted deposition testimony, as did plaintiffs, therefore, the Court will construe the motion to dismiss as a factual attack. It should be noted however that:

> [a] district court has the authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1) and, if it does, disputed issues of material fact will *not* prevent the court from deciding for itself the merits of jurisdictional claims. . . . Nor does the submission of evidentiary materials in connection with a 12(b)(1) motion convert the motion to one for summary judgment under Rule 56.

Mulligan v. Huber, No. 7:05CV5005, 2006 WL 994575, *5 (D.Neb. Apr. 10, 2006).

### III. DISCUSSION
#### A. Standing

> [S]tanding is perhaps the most important of the jurisdictional doctrines. . . . It is firmly established that [i]f a party lacks standing, the district court has no subject matter jurisdiction. . . . It is also long-settled . . . that standing cannot be inferred argumentatively from averments in the pleadings. . . . Instead, standing must affirmatively appear in the record. . . . [T]he party who seeks the exercise of jurisdiction in [its] favor, bears the burden of proving each element of standing.

Dolls Inc., Id. at *9 (internal citations and quotations omitted).

#### B. Lanham Act

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides:

(a) Civil Action
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another

person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In <u>Amer. Ass'n. of Orthodontists v. Yellow Book USA, Inc.</u>, 434 F.3d 1100 (8th Cir. 2006), the Court stated that "[s]ubsection (a)(1)(A) is referred to as the false endorsement prohibition; subsection (a)(1)(B) is referred to as the false advertising prohibition. In general, the statute is broadly construed as 'making certain types of unfair competition federal statutory torts.'" <u>Id</u>. at 1102, (quoting <u>Home Builders Ass'n. of Greater St. Louis v. L & L Exhibition Mgmt., Inc.</u>, 226 F.3d 944, 947 (8th Cir. 2000)).

In the instant case, plaintiffs have alleged a violation of the false advertising provision of the statute. (Plaintiffs' Complaint ¶ 5 and Count I). In Count I, plaintiffs allege that Vermeer knowingly or recklessly made false statements of fact about the 1055 Terrain Leveler which deceived TEAM Excavating. Plaintiffs also allege that these false statements were material in that they were likely to influence the purchasing decisions of the audience to whom they were directed and did in fact influence Crush and TEAM's decision to purchase the 1055 Terrain Leveler. As a result of this false advertising, plaintiffs allege that they lost business opportunities, investments, profits and expenses.

**C. Two Tests for Standing**

In <u>American Ass'n. of Orthodontists</u>, 434 F.3d 1100 (8th Cir. 2006), the Eighth Circuit recognized that courts have developed two tests to determine whether a plaintiff has standing to assert a false advertising claim under the Lanham Act. The Court

4

stated:

> Applying prudential standing considerations, a number of circuits have held, categorically, that false advertising claims not involving misuse of a trademark are actionable only when brought by competitors of the wrongdoer. . . . Other circuits have adopted a less categorical multi-factor test, based on the Supreme Court's test for antitrust standing, that focuses judicial enforcement of the Lanham Act on the protection of commercial interests and the prevention of competitive harm.

Id. at 1103-1104 (internal citations and quotations omitted). The Eighth Circuit did not find it necessary to choose which test to follow, as it determined that the plaintiff in that case did not meet either test.

Under the categorical approach, adopted by the Second, Seventh and Tenth Circuits, to have standing to assert a Lanham false advertising claim, "the plaintiff must be a competitor of the defendant and allege a competitive injury." Telecon Int'l America Ltd. v. AT&T Corp., 280 F.3d 175, 199 (2d Cir. 2001); Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 873 (10th Cir.) cert denied, 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995); L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc., 9 F.3d 561, 575 (7th Cir. 1993).

The Third Circuit has developed a multi-factored test. Under this test the Court examines the follow issues:

> (1) The nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws?
> (2) The directness or indirectness of the asserted injury.
> (3) The proximity or remoteness of the party to the alleged injurious conduct.
> (4) The speculativeness of the damages claim.
> (5) The risk of duplicative damages or complexity in apportioning damages.

Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 233 (3d Cir. 1998)(internal citations and quotations omitted). See also, Proctor & Gamble Co. v. Amway Corp., 242 F.3d 539 (5th Cir.), cert. denied, 534 U.S. 945, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001)(same); NDN Drywall, Inc. v. Custom Drywall, Inc., No. Civ. 04-CV-

5

4706DSDSRN, 2005 WL 1324056 (D. Minn. May 4, 2005)(same).  Because the Eighth Circuit has not decided which test to follow, the Court will analyze plaintiff's standing under both approaches.

### D. Defendants' Arguments

Defendants argue that the Court lacks jurisdiction over this action because in order to assert a claim under the Lanham Act, the plaintiff must be a competitor who suffered a competitive injury.  Defendants state that the plaintiffs in this case are not competitors, but instead were only purchasers, and thus they do not have standing to assert a claim under the statute.  In support of their motion, defendants cite the testimony of John Uhlmann, who owned both TEAM Excavating and Renaissance Leasing.

Q.  Let me make sure that I am clear on something.  In all of the companies that you own, operate or control, you're not in the business of building or developing terrain levelers?
A. No.
Q. Or attempting or conceiving to build one of these types of machines?
A.  That's correct.
Q. You're just really a consumer of this machine, someone who purchased it for your own use?
A. True.
. . .
Q. All right.  So you're not in competition with Vermeer Manufacturing -
A.  That's correct.

(Uhlmann Depo. pp. 315-317).

Defendants argue that plaintiffs lack standing because they cannot demonstrate a competitive injury.  Defendants state that the goal of the Lanham Act "'is to protect persons engaged in [interstate] commerce against unfair competition.'" Serbin v. Ziebart Int'l Corp. Inc., 11 F.3d 1163, 1170 (3d Cir. 1993)(quoting 15 U.S.C. § 1127). Defendants argue that plaintiffs' case has nothing to do with unfair competition in

6
Case 4:05-cv-00445-FJG   Document 187   Filed 05/23/06   Page 6 of 14

interstate markets. Plaintiffs are asserting reliance damages arising from the purchase of a machine which they claim did not perform as advertised. This is not the same as damages a competitor might suffer when false advertising diverted sales away from his product. Defendants argue that plaintiffs have not alleged that either of the defendants in this case made any false representations that could have had an impact on their ability to compete. Rather, all of the advertisements which plaintiffs allege were false, related to the machine itself. Defendants point out that if they had falsely advertised the T1055, those advertisements would have had the same impact on all sellers.

Defendants also argue that the second factor in the Conte test also weighs against finding standing because the plaintiffs are too remote from the alleged harmful conduct. Defendants argue that the correct parties to vindicate the wrong in this case would be manufacturers of competing products. Here plaintiffs have claimed that they were or would have been a seller of the *same* product.

**E. Plaintiffs' Arguments**

Plaintiffs' argue that they have standing because they compete with defendants for the sale of T1055 Terrain Levelers and also for the rental and sale of their services. Therefore, they assert that they have suffered the type of commercial and competitive injury which the Lanham Act was designed to address. Plaintiffs assert that they attempted to enter the market for renting and selling the Terrain Levelers to customers as well as using the machine to provide terrain leveling services in connection with excavation and quarrying. Plaintiffs state that they attempted to negotiate an agreement with Vermeer Manufacturing by which they would rent and sell Terrain Levelers. Plaintiffs also cite one example in which they allege they competed over a customer. They allege that they began cultivating Rick Brown of LB Enterprises as a

7

potential customer and that they made a number of sales calls. Plaintiffs state they presented this opportunity directly to Vermeer Manufacturing and ultimately, Manufacturing allowed Great Plains to rent a Terrain Leveler directly to Brown, without the involvement of plaintiffs. Plaintiffs argue that the rental to Brown shows that plaintiffs and Great Plains were in actual competition for the same customers in the rental and sale of the T1055 machines and services. Plaintiffs also allege that they need only show that they were in competition with one of the defendants to sustain federal subject matter jurisdiction.

In their surreply, plaintiffs state that the evidence shows that they were in competition with the defendants for the sale and rental of terrain levelers, as well as for excavation. Plaintiffs argue that the defendants advertised their machine as a replacement for Plaintiff's current methods of excavating. Thus, plaintiffs argue Vermeer Manufacturing cannot now claim to be noncompetitive with the companies they wanted to make obsolete. Plaintiffs state that they were not mere purchasers, but that they actively competed with defendants for consumers who needed excavation. Plaintiffs also argue that their injuries were direct, and not too remote to have standing. They argue that Defendants used their advertisements to encourage consumers to buy from defendants instead of plaintiffs. Plaintiffs state that they are selling the services that Vermeer Manufacturing claims are eliminated by the T1055. Plaintiff state that "[t]he fact that some other competitors assemble their own machines does not make the injury more remote or deprive Plaintiffs of standing." (Surreply, p. 4).

**F. Analysis**

As noted above, courts have employed two tests to determine whether a party has standing under the Lanham Act. The Court will discuss both tests, as the Eighth

8
Case 4:05-cv-00445-FJG   Document 187   Filed 05/23/06   Page 8 of 14

Circuit has not yet made clear which one it intends to follow.

Under the categorical test, plaintiffs must be competitors of the defendants. Plaintiffs argue that they are competitors of defendants, because they attempted to obtain the same customers. Plaintiffs point to the example of JB Enterprises, whom they allege was a potential customer of theirs. However, in their Suggestions in Opposition, they admit that they presented this opportunity directly to Vermeer Manufacturing and ultimately Vermeer Manufacturing allowed Great Plains to rent a Terrain Leveler directly to Brown *"without the involvement of Plaintiffs."* (Plaintiffs' Suggestions in Opposition, pp. 4-5). This sounds more like a referral type of arrangement, rather than a competitive arrangement. Additionally, the deposition testimony of John Uhlmann also does not support plaintiffs' position:

Q. All right. So you're not in competition with Vermeer Manufacturing –

A. That's correct.

Q. – in building these machines?

A. That's correct. That's correct. I just wanted you to be clear.

Q. Are you in competition with Great Plains?

A. I didn't think so until later. Great Plains certainly felt I was in competition with them.

Q. But you had no intentions of being in compensation [sic] with Great Plains when Crush Tech purchased the Terrain Leveler, the 1055; true?

A. No, I did not have – I did not contemplate that I was going to be – the people that sold me the Terrain Leveler were going to compete with me.

(Uhlmann Depo. p. 317).

Thus, it is clear that plaintiffs were not competitors of either Vermeer Manufacturing or Great Plains (Vermeer's exclusive dealer). Vermeer manufactured the

machine and Great Plains sold the machine.  Plaintiffs provided excavating services to customers.  Accordingly, the Court finds that plaintiffs do not fit within the first test.

The second multi-factor test requires the Court to examine five factors.  Under the first factor, the Court must determine the nature of plaintiff's injury - is it the type that Congress sought to redress in providing a private remedy for violations of the Lanham Act?  In <u>Crab House of Douglaston, Inc. V. Newsday, Inc.</u>, 418 F.Supp.2d 193 (E.D.N.Y. 2006), the Court stated:

> Congress' purpose in enacting § 43(a) was to create a special and limited unfair competition remedy, virtually without regard for the interests of consumers generally and almost certainly without any consideration of consumer rights of action in particular. . . . As the Second Circuit has held, The Act's purpose, as defined in § 45, is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct.

<u>Id</u>. at 213 (internal citations and quotations omitted).  In <u>Crab House</u>, the plaintiffs were individual and companies that operated restaurants, a medical practice, legal practices and a musical repair shop.  The plaintiffs had purchased advertising from two newspapers who allegedly inflated their circulation figures.  The Court stated, "it appears that Plaintiffs are conflating 'false advertising' with 'fraudulently induced to purchase advertising.'" <u>Id</u>. at 214.  The Court concluded that "Plaintiffs are consumers of Defendants' product and advertising, and not competitors.  As consumers, they lack standing under § 43(a) of the Lanham Act." <u>Id</u>.  This Court agrees that plaintiffs in the instant case have also confused false advertising with being fraudulently induced to purchase the Terrain Leveler.  Thus, the Court finds that this factor does not weigh in favor of standing.

The second and third factors address the directness or indirectness of the asserted injury and the proximity or remoteness of the party to the alleged injurious

10

conduct. In the instant case, plaintiffs allege that their primary damages were lost profits from a delayed quarry business that they hoped to operate at 350 Highway in Jackson County, Missouri. In his deposition, Mr. Uhlmann testified:

Q. Okay. Now, my question for you, Mr. Uhlmann, is as I understand it, would you agree with me that the lion's share of the damages that you and the other two plaintiffs in this case are claiming relates to, in your view, lost profits at the 350 Highway location?

A. That's all we could - yes. Our claim is for lost profits at 350.

(Uhlmann Depo. p. 277, lines 5-12).

In the Complaint, plaintiffs allege that "[a]s a result of Vermeer's false advertising in violation of the Lanham Act, TEAM and Uhlmann suffered damages including lost business and business opportunities, lost investment and value of business, and lost profits and expenses." (Complaint, ¶ 28). However, the false advertising did not relate to plaintiffs' services or business. The alleged false statements related to the features and capabilities of the 1055 and 1255 Terrain Levelers. Plaintiffs state that relying on these misrepresentations and advertisements, they purchased a 1055 Terrain Leveler from Great Plains and then it did not perform as promised. As in Conte Bros. Automotive, 165 F.3d 221:

> Appellants' remoteness from the allegedly harmful conduct also weighs against recognizing a right to sue on these facts. Here, as in Associated General [459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)], the existence of an identifiable class of persons - manufacturers of competing products- whose self-interest would normally motivate them to vindicate the public interest . . . diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general.

Id. at 234 (internal quotations omitted). Thus, the Court finds that both of these factors, the indirectness of the injury and the remoteness of the plaintiffs to the conduct weigh

against finding standing.

The fourth factor is the speculativeness of the damage claim. Plaintiffs allege that they suffered lost profits and business opportunities because of the false representations made regarding the capabilities of defendant's machine. However, the Court finds that plaintiffs would have difficulty proving that it was these representations which caused them to lose business. Thus, this factor also weighs against finding that plaintiffs have standing.

The final factor is the risk of duplicative damages or complexity in apportioning damages. In addition to their claim under the Lanham Act, plaintiffs have also asserted state law claims for fraud, breach of warranty and breach of contract. If plaintiffs were allowed to proceed under the Lanham Act as well as under their state law claims, the Court finds that there would be a risk of duplicative damages. Therefore, the Court finds that this factor also weighs against finding standing.

The five factors mentioned by the Court in Conte Bros. Automotive all weigh against standing. Despite their assertions to the contrary that they were competing with Great Plains for customers, it is obvious that plaintiffs were not competitors of either Great Plains or Vermeer Manufacturing. Instead, plaintiffs were customers of the defendants. While it may be true that plaintiffs referred one individual to the defendants, this does not make them competitors. "[T]he focus of the Lanham Act is on *commercial* interests [that] have been harmed by a competitor's false advertising . . . " Conte Bros. Automotive, 165 F.3d at 234 (internal quotations and citations omitted). Even assuming that the defendants' advertising was false, it did not directly harm the plaintiffs, as the advertising related to defendants' own product. As the Court noted above, the plaintiffs have confused false advertising under the Lanham Act with being falsely induced to

purchase a product, which is a claim not covered by the Act. Accordingly, the Court finds that plaintiffs lack standing to bring their Lanham Act claim.

The Supplemental Jurisdiction statute provides that a Court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As the Lanham Act was the only claim on which federal jurisdiction was based, the Court hereby declines to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims. Accordingly, the Court hereby **DISMISSES** plaintiffs' Complaint.

**G. Attorneys Fees and Costs**

Vermeer also seeks attorney fees and costs because they argue that plaintiffs brought this lawsuit with the assistance of experienced counsel and with full knowledge of the requirements of the statute. Defendants argue that the Lanham Act claim is at best groundless and at most vexatious. Thus they argue that an award of attorney fees is justified. Vermeer points to the section of the statute which states that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In Pannonia Farms, Inc. v. Re/Max Intern. Inc., 407 F.Supp.2d 41, 46 (D.D.C. 2005), the Court stated, "[s]ince this Court's decision to dismiss this case is based on plaintiff's lack of standing, a violation under the Lanham Act has not been established and attorneys fees are inappropriate." Additionally, in Associated Bank-Corp. v. Earthlink, Inc., No. 05-C-0233-S, 2005 WL 2240952 (W.D.Wis. Sept. 13, 2005), the defendant asserted that it was entitled to attorneys' fees because the plaintiff did not have standing to bring an action under the Lanham Act. The Court stated:

> Under the Lanham Act, a court may award reasonable attorney's fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). The party needs to prove an exceptional case exists by clear and convincing

13

> evidence. . . . Further, when a defendant is the prevailing party in an action the standard is not whether plaintiff filed the action in good faith but rather whether the action was oppressive. . . . An action is oppressive if it lacked merit, had elements of an abuse of process claim and plaintiff's conduct unreasonably increased the cost of defending against the suit.

Id. at *4 (internal citations omitted). In the instant case, the Court does not find that the action was oppressive or that plaintiffs' conduct unreasonably increased the cost of defending against the suit. Accordingly, the Court denies defendants' request for an award of attorney fees.

### IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** Defendant Vermeer's Motion to Dismiss for Lack of Jurisdiction (Doc. # 120), **GRANTS** Defendant Vermeer Great Plains, Inc.'s Motion to Dismiss for Lack of Jurisdiction (Doc. # 122). The Court hereby **DENIES AS MOOT** Plaintiffs' Motion for Sanctions (Doc. # 116); Vermeer Great Plains Inc.'s Motion to Strike Testimony of Plaintiff's Expert Chris Pflaum (Doc.# 124); Vermeer Great Plains Inc.'s Motion to Strike Doc. # 125 (Doc. # 127); Vermeer Manufacturing Company's Motion to Strike Plaintiff's Designation and Disclosure of Expert Witness Christopher Pflaum (Doc. # 131); Vermeer Manufacturer's Motion to Strike Plaintiff's Disclosure and Designation of Gary Kurtz (Doc. # 133); Plaintiff's Motion for Discovery (Doc. # 141); Vermeer Manufacturing Company's Motion for Summary Judgment (Doc. # 143); Vermeer Great Plains Motion for Summary Judgment (Doc. # 148); Joint Motion for Extension of Time of One-Day for Pre-Trial Filings (Doc. # 170) and Plaintiff's Motion for Leave to File Excess Pages (Doc. # 186).

Date: May 23, 2006  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
United States District Judge